**SO ORDERED.**

**SIGNED this 12 day of August, 2011.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| STEPHEN L. THORNE and | 09-04515-8-SWH |
| ELEANOR W. THORNE, | CHAPTER 13 |
| DEBTORS | |

### ORDER REGARDING MOTION TO AMEND ORDER

The matter before the court is the Internal Revenue Service's (the "IRS") motion, pursuant to Federal Rule of Bankruptcy 9023, to amend the court's order dated March 24, 2011, which reduced the IRS' claim from $53,093.55 to $25,212.97. A hearing was held on July 20, 2011, in Raleigh, North Carolina. At the conclusion of the hearing, the court took the matter under advisement and allowed both parties to submit post-hearing memoranda.

### STATEMENT OF THE CASE

The debtors filed a joint chapter 13 petition on June 1, 2009. Debtors each held a 50% ownership interest in National Mortgage Access, Inc. ("National Mortgage"). National Mortgage was a mortgage banking corporation that employed approximately 100 people. It is no longer an operating entity, but while still active, it underpaid its employment taxes due for the fourth quarter of 2006 (the "4th Quarter").

The IRS requires employers to file a Form 941 to report quarterly employment taxes. National Mortgage's Form 941 for the 4th Quarter was not filed until July of 2009, more than two years after any taxes were due.[1] Debtors' employment taxes consist of wages withheld from employees for the purpose of paying employees' federal income tax, Social Security, and Medicare taxes, in addition to Social Security and Medicare taxes owed by the employer. The filed Form 941 for the 4th Quarter reports total employment taxes in the amount of $124,139.95. Of the $124,139.95 in debtors' employment taxes, $92,122.97 is the amount withheld from employee wages and classified as trust fund tax liability.[2]

During October and November of 2006, National Mortgage made tax payments totaling $71,046.40 to the IRS. The IRS has stipulated that these are voluntary tax payments. National Mortgage did not make payments in December 2006 or at any time thereafter. The IRS required that all employment tax deposits be made by the debtors through an electronic payment system. Debtors used this method to make the October and November 2006 payments. In connection with debtors' $71,046.40 payment, the IRS credited National Mortgage with $32,016.99 on its non-trust fund taxes and the remaining $39,029.41 on its trust fund taxes. This credit method satisfied National Mortgage's non-trust fund balance, but left a deficiency in trust fund obligations in the amount of $53,093.55.

---

[1] Although National Mortgage's Form 941 was filed late, the partial payments for the 4th Quarter were made on time.

[2] The term "trust fund tax liability" refers to the amount of wages withheld by employers from employee wages and held in trust for the IRS. In contrast, non-trust fund tax liability refers to the amount of taxes an employer owes directly to the IRS. Trust fund tax liability is calculated by totaling line 3 (total income tax withheld from employees) of Form 941 with one-half of line 5d (total Social Security and Medicare taxes withheld). In this case, National Mortgage's 941 listed line 3 as $60,105.99 and line 5d as $64,033.96. Adding $60,105.99 and one-half of $64,033.96 equals $92,122.97.

On July 10, 2009, the IRS filed their original proof of claim, Claim No. 10-1, in the amount of $144,655.60. After amending the claim eight times, on January 21, 2011, the IRS filed their latest amended claim, Claim No. 10-9 (the "Claim"), in the amount of $57,229.95, of which $53,093.55 is the trust fund tax at issue.

The debtors objected to the Claim on July 5, 2010, asserting that the amount of the claim was overstated. More specifically, the debtors contend that they had no reasonable means of designating how their payments for the 4th Quarter were to be applied when they made payments electronically, and thus were not afforded an opportunity to designate their voluntary payments to the trust fund portion of the claim. As a result, they contended, the amount of the claim against them, individually, was overstated, as it should only have been allowed in an amount no more than $21,076.57.

In support of its claim, the IRS contended that the debtors never attempted to direct the IRS to apply their voluntary payments to the trust fund portion of the tax obligations. The IRS maintained that it was the published policy of the IRS in 2006 to apply non-designated payments first to non-trust fund taxes and then to trust fund liability.

After holding a hearing on the issue on January 26, 2011, the court issued an order on March 24, 2011, holding the debtors as responsible parties under 26 U.S.C. § 6672(a), and finding the debtors met the reckless disregard test under Wright v. United States, 809 F.2d 425, 427 (7th Cir. 1987), and as adopted in O'Connor v. United States, 956 F.2d 48, 52 (4th Cir. 1992). Furthermore, the court held the debtors had no reasonable method to ensure that their payments were to be applied to their trust fund liability; as such, they were unable to designate how their payment of $71,046.40 would be applied, as they had a right to do. Therefore, the court amended the portion of the Claim resulting from the trust fund assessment penalty to $21,076.57 to reflect the deficiency of trust fund

liability that would have been owed had the debtors' entire 4th Quarter payment been applied to their trust fund liability before satisfying their other tax obligations. As a result, the Claim was reduced from $57,229.95 to $25,212.97.

Pursuant to Fed. R. Bankr. 9023, on April 7, 2011, the IRS moved the court to amend its March 24, 2011 order, to increase the $25,212.97 Claim amount to $36,464. The IRS contends the debtors could not have intended all of the payments to be applied to the trust fund because three of the payments were made when the tax liabilities consisted of both trust and non-trust fund tax liabilities, and the payment was in excess of the trust fund portion. The debtors, however, contend it is equitable to view the debtors' liabilities and payments in terms of the entire tax period at issue, and, therefore, argue the court's order is well-grounded on equitable principles in reducing the trust fund liability for the tax period to $21,076.57.

## DISCUSSION

A court may, pursuant to Federal Rule of Civil Procedure 59(e) (made applicable in bankruptcy by Rule 9023 of the Federal Rules of Bankruptcy Procedure), consider a motion to alter or amend a judgment. A judgment, for purposes of the rule, includes any order appealable to an appellate court. See Fed. R. Bankr. P. 9002(5). In the Fourth Circuit, Rule 59(e) has been interpreted as allowing "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Though courts have found "considerable discretion" in these matters regarding Rule 59(e), Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993), the motion may serve to permit a court to "correct its own errors," thereby avoiding the

expense of appellate proceedings. Pacific Ins. Co., 148 F.3d at 403. Rule 59(e) motions "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id. (citing multiple cases).

The IRS does not assert a change in controlling law or the discovery of new, previously unavailable evidence. It argues that the court erred in applying all of the four payments, which were made by the debtors on October 16, November 3, November 16, and December 6, 2006, to the trust fund liabilities. More specifically, the IRS contends the payments should be applied to the trust and non-trust liabilities for the periods they relate to, as debtors "could not have intended all of the payments be applied to trust fund, because three of the payments were made when the tax liabilities consisted of both trust and non-trust fund tax liabilities." Motion to Amend Order at 1. In essence, the IRS seems to take a more "micro-view" in interpreting the court's order, as it contends each payment should *individually* be considered in order to determine whether debtors intended the payment to be applied to the trust and/or non-trust liabilities. For example, the IRS argues that because the November 15, 2006 payment by debtors was the exact amount of the tax liability due (trust and non-trust) for that period, debtors could not have intended the payment to be applied only to the trust fund obligation. Therefore, in the IRS' view, the total amount, trust and non-trust, for the three contested pay periods equals $64,055, the trust fund portion of the liabilities (approximately 74% of the total liabilities) equals $47,401, and, as a result, if debtors had designated

the payments to be applied to trust fund liabilities, the IRS would have a claim for $36,464[3]. Id. at 3.

Debtors, however, seem to take a more "macro-view" in interpreting the court's order, as they contend "[i]t is equitable to view the debtors' liabilities and payments in terms of the *entire* tax period at issue." Debtors' Response in Opposition to Motion to Amend Order at 2 (emphasis added). More specifically, considering the total liability of $92,122.97 was reduced by the total payments of $71,046.40, debtors argue the remaining trust fund liability, and, therefore, the appropriate amount of the IRS' claim, equals $21,076.57. Id. at 2,3.

The court first points out that "[i]n general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" Pacific Ins. Co., 148 F.3d at 403 (quoting 11 Wright et al., Federal Practice and Procedure 2820.1, at 124 (2d ed. 1995)). Furthermore, it is "improper to use such a motion to ask the court to 'rethink what the court has already thought through - rightly or wrongly.'" Moore v. Life Ins. Co. of N. Am., 708 F. Supp. 2d 597, 614 (N.D.W. Va. 2010) (quoting Above the Belt, Inc. v. Mel Bohannon Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983).

In its original motion, the IRS could have argued how the payments should be viewed and applied to the trust and non-trust fund tax liabilities. However, the IRS missed its opportunity to raise this argument. A Rule 59(e) motion cannot be used to present evidence that could and should have been presented prior to the entry of final judgment. Pacific Ins. Co., 148 F.3d at 403. As a result, there does not appear to be a sound basis upon which to reconsider the application of the

---

[3]Both parties informed the court at the July 20, 2011 hearing that the designation of the $10,000 payment by debtors on November 3, 2006 is not at issue in this matter.

debtors' payments.  Therefore, the court is inclined to follow the debtors' "macro" interpretation of this court's March 24, 2011 order, and view the debtors' liabilities and payments in terms of the entire tax period at issue.  The order stated the IRS' "portion of the Claim resulting from the trust fund assessment penalty is amended to $21,076.57 to reflect the deficiency of trust fund liability that would be owed had debtors *entire* 4th Quarter payment been applied to their trust fund liability before satisfying their other tax obligations."  Order of March 24, 2011 at 8 (emphasis added).  It logically follows from the court's language that the entire tax period should be viewed as a whole, and the payments should be viewed together as a whole, which reduces the trust fund liability for the tax period to $21,076.57.  Therefore, as there is no clear error of law, nor does amending the order prevent manifest injustice to the IRS, there are no grounds for amending the court's March 24, 2011 order.

## CONCLUSION

Based on the foregoing, the IRS' motion to amend is **DENIED**.  Pursuant to the court's March 24, 2011 order, the allowable Claim remains $25,212.97, plus appropriate pre-petition interest on the reduced amount of the claim.[4]

**SO ORDERED**.

## END OF DOCUMENT

---

[4] The court amended the trust fund assessment penalty to $21,076.57.  The total allowed Claim amount includes that sum, as well as additional $4,136.40 of unrelated civil penalties that were not at issue.